UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

SECURITIES AND EXCHANGE COMMISSION,

PLAINTIFF,

v.

STRAIGHTPATH VENTURE PARTNERS LLC,
STRAIGHTPATH MANAGEMENT LLC,
BRIAN K. MARTINSEN,
FRANCINE A. LANAIA,
MICHAEL A. CASTILLERO, AND
ERIC D. LACHOW,

DEFENDANTS.

22 Civ. 03897 (LAK)

---

### DECLARATION OF SCOTT N. SHERMAN

I, Scott N. Sherman, pursuant to 28 U.S.C. § 1746, declare and state as follows:

1. I am a duly licensed attorney and member of the bars of the states of Georgia, Florida, Virginia and Washington, D.C. I am a partner with the law firm of Nelson Mullins Riley & Scarborough LLP ("Nelson Mullins"). I represent Defendants StraightPath Venture Partners LLC and StraightPath Management LLC (collectively, "StraightPath"), as well as Brian K. Martinsen, Francine A. Lanaia, Michael A. Castillero and Eric D. Lachow (together with StraightPath, the "Defendants") in this above-captioned action filed by Plaintiff Securities and Exchange Commission (the "SEC").

2. I make this Declaration in support of the Defendants' Memorandum of Law in Opposition to the SEC's "Emergency" Application for Extraordinary Injunctive Relief. This Declaration is based primarily on my involvement and participation in representing the Defendants in connection with the SEC investigation that preceded this lawsuit and in proceedings before this Court since the SEC filed this action, my participation in communications with the SEC, and my

1

review of documents produced in connection with this matter and correspondence with the SEC concerning this matter.

3. Because this Declaration is being submitted for the limited purpose of expedited briefing for the Court in response to the SEC's emergency relief application, the Declaration does not include all the facts that I have learned during the course of this matter. Where the contents of documents and the actions and statements of and conversations with others are reported herein, they are reported in substance and in part. Where figures, calculations, and dates are set forth herein, they are approximate, unless stated otherwise.

4. I have seen a copy of a subpoena dated November 12, 2020 that I understand was served by the SEC enforcement staff on StraightPath on or around November 12, 2020. From a review of that Subpoena, it included 18 categories of documents and information in connection with the staff's investigation of the company. StraightPath engaged my firm as counsel for the Defendants in late August 2021. I assisted Defendants in their cooperation with the staff's investigation. My firm assisted StraightPath in responding to the SEC's November 2020 subpoena, additional subpoenas that SEC enforcement staff subsequently served in November 2021 on individuals associated with the company, and other questions the staff posed in the course of its investigation. In November 2021, StraightPath engaged my co-counsel, Cahill Gordon & Reindel LLP ("Cahill"). Cahill has provided additional guidance and advice to the Defendants in responding to the SEC's subpoenas.

5. Attached as Exhibit 1 is a true and correct copy of a letter that my firm and my co-counsel submitted on behalf StraightPath to SEC enforcement staff on December 2, 2021 describing StraightPath's efforts to cooperate with the staff's investigation before and after

retaining counsel. The information contained in that letter is hereby incorporated by reference as though fully set forth herein.

6. As set forth in Exhibit 1, StraightPath made productions without the aid of counsel from November 2020 through August 2021 to SEC enforcement staff of thousands of pages of documents to comply with various requests from the staff. The SEC re-produced copies of those productions to my office after my law firm, Nelson Mullins, was retained as counsel.

7. As set forth in Exhibit 1, the productions noted above to the SEC were made during the COVID-19 pandemic when StraightPath was forced to shut down its Manhattan office in New York, New York.

8. Counsel at Nelson Mullins and Cahill, as part of their representation of the Defendants, have engaged in extensive privileged communications with one another and with StraightPath and the individual Defendants, including confidential communications about strategy and other sensitive topics via certain StraightPath email accounts used by certain of the individual Defendants.

9. From September 2021 through February 2022, StraightPath with the assistance of its counsel cooperated with numerous document requests from SEC enforcement staff, including by collecting, reviewing and producing thousands of documents (including an extensive number of emails, as well as tens of thousands of text messages collected from the individual Defendants), numerous interviews and calls with various individuals associated with StraightPath, proffering information in letters and on calls with the staff, and agreeing to make five individuals associated with StraightPath available for on-the-record investigative testimony with the SEC in March 2022.

10. In or about February 2022, StraightPath through my firm and co-counsel initiated settlement discussions with SEC enforcement staff to explore whether the SEC would agree to a

resolution under which the company would not admit or deny the veracity of the SEC's alleged concerns. During the resulting settlement discussions, which I personally participated in, my firm and co-counsel made statements and provided information and documents on behalf of the Defendants to the SEC pursuant to Federal Rule of Evidence 408. The Defendants' reserve all their rights under Rule 408(a), all the statements made in this Declaration are offered for purposes authorized by Rule 408(b), and nothing in this Declaration is intended as a waiver of the Defendants' rights to enforce Rule 408(a) against the SEC.

11.    I have reviewed the SEC's memorandum of law in support of its "emergency" application for an asset freeze and other relief (*see* Dkt. 8), including the allegations (at id. at 14-16) concerning a document preservation incident that occurred in May 2021 before StraightPath engaged counsel to respond to the SEC's November 2020 subpoena. From my participation in settlement discussions with the SEC on behalf of the Defendants, I know that StraightPath through my firm and co-counsel brought that incident to the attention of SEC enforcement staff during a Rule 408 settlement presentation to the staff in February 2022. Through its counsel during that discussion, StraightPath directed the staff to contemporaneous text messages and communications suggesting that the company deleted email accounts of what it viewed to be rogue referral agents in an effort to prevent them from misrepresenting information to potential investors. Attached hereto as Exhibit 2 is a true and correct copy of the communications that were referenced in that February presentation.

12.    On February 18, 2022, the Defendants and SEC enforcement staff agreed to an arrangement whereby the Defendants would authorize my firm and co-counsel to make attorney-proffer presentations on their behalf to SEC enforcement staff pursuant to Rule 408 in lieu of testimony at that time from the individual Defendants and in the effort to reach a reasonable

settlement in connection with the staff's investigation. To allow the parties to focus their efforts on these settlement discussions, the parties agreed to adjourn testimony and instead establish control dates for potential testimony from StraightPath witnesses in the event that a settlement could not be reached. I have not attached the correspondence from February 18, 2022 reflecting these terms because it was sent pursuant to Rule 408.

13. At the SEC's request and as a show of good faith toward reaching a settlement without testimony, the Defendants agreed on February 18, 2022 to a standstill of StraightPath's business under which they voluntary undertook to abide by certain conditions. I have not attached the correspondence from February 18, 2022 reflecting these terms because it was sent pursuant to Rule 408. However, the conditions of this standstill included (among others):

- StraightPath agreed to return any investment funds received after February 18, 2022.

- StraightPath agreed not to solicit any investments after February 18, 2022.

- StraightPath agreed to promptly contact broker-dealers that had been referring individual retail investors to StraightPath and advise them that StraightPath would not be accepting any new investment subscriptions for the time being.

- StraightPath agreed to also make reasonable efforts to notify any finders or referral agents who had been referring individual retail investors to StraightPath pursuant to arrangements with StraightPath and advise them that StraightPath would not be accepting any new subscriptions for the time being.

- StraightPath agreed to provide to the SEC information sufficient to identify any planned distributions of cash or stock to investors that would on or before April 8, 2022.

14. At the request of SEC enforcement staff, my firm and co-counsel notified the staff via email on February 22, 2022 that StraightPath anticipated making distributions to investors who previously acquired various series limit liability corporation membership interests in StraightPath funds that invested in 23andMe, SoFi, AirBnb and Grab securities. As an example at that time,

we produced a list of StraightPath investors that StraightPath was using regarding distributions related to 23andMe. At the time, the staff did not express any concerns or ask any follow-up questions regarding this information. I have not attached the email from February 22, 2022 because it was sent pursuant to Rule 408.

15.  On March 7, 2022, the Defendants agreed to supplement StraightPath's standstill arrangement at the request of SEC enforcement staff with an additional undertaking to provide the staff with four business days' advance notice of any distributions of cash or stock to StraightPath investors and of any expenditures in excess of $10,000 by StraightPath Venture Partners LLC or SP Ventures Funds LLCs 1 through 9 (except that notice would not be required or provided for expenditures to pay StraightPath's counsel fees for this matter or for disbursements to cover payroll, salary, or benefits for StraightPath employee Melissa Machado), and confirmed its agreement via email to the staff that day. I have not attached the email because it was sent pursuant to Rule 408.

16.  On February 23, 2022, SEC enforcement staff emailed StraightPath a list of multiple topics that the SEC wanted StraightPath to address during an attorney-proffer presentation on March 7, 2022. Although the email does not explicitly reference Rule 408, I have not attached the email out of an abundance of caution because it was sent in the course of settlement discussions pursuant to Rule 408.

17.  My firm and co-counsel as well as StraightPath representatives collectively devoted hundreds of person-hours to collecting, organizing, and summarizing documents and information to prepare for the March 7 presentation, which my firm and co-counsel delivered to SEC enforcement staff pursuant to Rule 408 over the course of about three hours on March 7.

18. After the March 7 presentation, SEC enforcement staff asked the Defendants to provide another attorney-proffer presentation to address new questions that the staff raised about various inter-fund transfers of money by StraightPath.

19. During the March 7 presentation and a follow-up call with SEC enforcement staff, my firm and co-counsel asked the staff to identify what, if any, relief the SEC would seek to settle its inquiry, including an estimated range of any financial penalties that the SEC would seek in any settlement.

20. In response, on March 17, 2022, SEC enforcement staff sent an email to my firm and co-counsel in which the staff made statements that we understood to mean that the staff would address our request for a settlement proposal after my firm and co-counsel provided a presentation regarding interfund transfers and provided assurances that StraightPath had stock to cover all the investments in StraightPath's current offerings.

21. In good faith reliance on those statements by the SEC staff, my firm and co-counsel again undertook efforts to respond to the two requests. My firm and co-counsel as well as StraightPath representatives collectively devoted hundreds of person-hours of work to collect, produce and present information and documents addressing these additional topics and preparing for the presentation to the staff.

22. On March 31, 2022, I emailed the SEC staff whereby we offered to conduct two presentations, one on inter-fund and a separate presentation on acquisitions and sales. We ultimately agreed with the SEC for my firm and co-counsel to present on inter-fund transfers on April 4, 2022. I have not attached the email because it was sent pursuant to Rule 408.

23. Prior to the presentation on April 4, 2022, my co-counsel communicated with the SEC staff that we would present on share acquisitions and sales to investors on either April 28 or 29, 2022. I have not attached the email because it was sent pursuant to Rule 408.

24. As part of StraightPath's efforts to fully cooperate with the SEC Staff and provide answers to their questions while we worked to reach a settlement, my firm and co-counsel delivered an approximately one-hour presentation to SEC enforcement staff pursuant to Rule 408 on April 4, 2022 on the topic of inter-fund transfers.

25. On March 29, 2022, my firm and co-counsel provided notice to SEC enforcement staff via email that StraightPath intended to wire on April 1, 2022 about $2 million in funds to a private equity firm for the purchase pre-IPO shares of Rubrik stock. The SEC did not raise the notion of or seek any judicial intervention at that time. I have not attached the email because it was sent pursuant to Rule 408.

26. During subsequent correspondence with SEC staff about this transaction, my firm and co-counsel explained to the staff on March 31, 2022 that StraightPath was currently obligated to make two purchases of Rubrik shares - a purchase of 50,000 shares that StraightPath intended to pay for on April 1 and an additional commitment to buy roughly 35,000 shares this year in a separate transaction. We informed the SEC Staff that Martinsen agreed that the funds to pay for this stock would come from him and not from funds currently held with any StraightPath entity. I have not attached the email because it was sent pursuant to Rule 408.

27. During discussions with the SEC staff, we informed them of StraightPath's position that it had inadvertently oversold Rubrik offerings.

28. On April 8, 2022, SEC enforcement staff provided my firm and co-counsel with guidance on topics to address at the Rule 408 presentation scheduled for April 28 related to its

internal review of share acquisitions and sales. Among other things, the staff stated that it would like the presentation to focus on offerings related to Rubrik, Triller, Kraken and Eat Just securities. The staff also required "firm dates" for on-the-record investigative testimony from five individuals associated with StraightPath (namely, Mr. Martinsen, Ms. Lanaia, Mr. Castillero, Mr. Lachow and Ms. Machado). They asked for dates in May 2022.

29. On April 18, 2022, my firm and co-counsel proposed to make the five StraightPath witnesses available for testimony on dates in June and July 2022.

30. On April 20, 2022, SEC enforcement staff stated that they wanted the testimony to be conducted earlier, on dates in May and June 2022.

31. On April 22, 2022, my firm and co-counsel responded that the proposed dates in June and July were the soonest that we could make those witnesses available for a variety of practical and logistical reasons.

32. Over the next 13 days, SEC enforcement staff made a series of requests for documents and information from StraightPath and began asserting that the company had violated the standstill by making the distributions to investors that StraightPath had notified the SEC about on February 22, 2022 (as noted in paragraph 14 above). The staff did not discuss whether it would agree to the Defendants' proposed dates for testimony in the meantime.

33. During this period, StraightPath continued its efforts to cooperate with the SEC's investigation and comply with the standstill. For example, StraightPath provided advanced notice to the SEC on May 2, 2022 that the company intended to follow through with the purchase of the roughly 35,000 shares of Rubrik that had been previously disclosed to the SEC in March 2022 (as noted in paragraphs 26 and 27 above). I have not attached the email because it was sent pursuant to Rule 408.

9

34. On Friday May 6, 2022, I and others participated in two calls with SEC enforcement staff. During the calls, the staff advised my firm and co-counsel that if StraightPath did not agree to concede liability on scienter-based securities fraud charges that the SEC proposed for the first time that day — without any proposal, assurances or agreement on the amount of any disgorgement or civil penalties that would be imposed as a result — the SEC would file a complaint in federal court charging the Defendants along with an emergency application for a temporary restraining order, preliminary injunction, asset freeze, receiver, and other relief.

35. During the same May 6 calls, SEC enforcement staff advised for the first time that the Defendants' counsel should contact the United States Attorney's Office for the Southern District of New York (the "Office").

36. That same day, my firm and co-counsel participated in a call with the assigned Assistant United States Attorney, who confirmed that her Office has been investigating StraightPath "for a while now."

37. Recent disclosures by the SEC since this lawsuit was filed reveal that that the SEC began communicating with the Office concerning StraightPath at some point last year, and has been communicating with the Office about this matter since at least as early as December 2021. For example, attached as Exhibit 3 is a true and correct copy of correspondence between my firm and co-counsel and the SEC from May 14 through 16, 2022 in which we informed the SEC that we would assume for purposes of these proceedings that the SEC prompted the Office to open that criminal probe unless the SEC reported otherwise, and the SEC responded without correcting or addressing that assumption. Similarly, I have reviewed a privilege log provided by the SEC on May 18, 2022 describing documents that the SEC withheld from its productions responding to the Defendants' request for all correspondence between the SEC and the Office concerning this matter.

The privilege log assets that the SEC has withheld the SEC's "[c]ommunications with federal criminal authorities concerning the Investigation" from "December 2021 to present" involving "One or more Assistant U.S. Attorneys ('AUSA's) in the Southern District of New York ('SDNY'), and one or more USPIS Postal Inspectors" based upon alleged claims of law enforcement and attorney-work product privilege.

38. On Sunday May 8, 2022, five days before the SEC filed its application for emergency relief, the Defendants proposed to the SEC staff that the parties consent to a Court order requiring that the Defendants to abide by a series of investor protection measures during this litigation to obviate the need for the SEC's emergency application. These proposed measures are detailed in the Defendants' letter filed with the Court on May 13, 2022. The SEC rejected those proposed measures, filed this lawsuit and the related emergency application on May 13, 2022, and further issued a May 16, 2022 press release that was harshly critical of the Defendants. A copy of the SEC's press release is attached as Exhibit 4.

39. Also after filing this lawsuit on Friday May 13, 2022, the SEC demanded on Saturday May 14, 2022 expedited depositions of the four individual Defendants on Tuesday May 17 through Friday May 20, 2022. In light of the Office's criminal investigation, my firm and co-counsel informed the SEC that the individual Defendants were willing to be deposed if the SEC requested that the Office obtain use-immunity orders pursuant to 18 U.S.C. § 6003 immunizing them from the use of their deposition testimony in any criminal prosecution. The SEC refused this request. Exhibit 3 reflects our correspondence with the SEC from May 14 to 16, 2022 regarding use-immunity orders pursuant to 18 U.S.C. § 6003.

40. Attached as Exhibit 5 is a true and correct copy of the transcript of the deposition of Doug Smith in this matter that I took on May 19, 2022, which I received from the court reporter.

41. Attached as Exhibit 6 is a true and correct copy of ten tabs extracted from the Excel document and converted to .pdf, bates-labeled SEC-STRAIGHTPATH-000514555 produced by the SEC on May 20, 2022.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on: May 20, 2022     _____

SCOTT N. SHERMAN, ESQ.