UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

SECURITIES AND EXCHANGE COMMISSION,

        Plaintiff,

- against -

STRAIGHTPATH VENTURE PARTNERS LLC, STRAIGHTPATH MANAGEMENT LLC, BRIAN K. MARTINSEN, MICHAEL A. CASTILLERO, FRANCINE A. LANAIA, and ERIC D. LACHOW,

        Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

ECF Case

No. 22 Civ. 3897 (LAK)

No. 22 Misc. 359 (LAK)

# THE GOVERNMENT'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR A MODIFICATION OF THE RECEIVERSHIP ORDER

JAY CLAYTON
United States Attorney for the
Southern District of New York
Attorney for the United States
of America

Allison Nichols
Adam S. Hobson
Matthew R. Shahabian
Assistant United States Attorneys

    *- Of Counsel -*


UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

SECURITIES AND EXCHANGE COMMISSION,

    Plaintiff,

- against -

STRAIGHTPATH VENTURE PARTNERS LLC, STRAIGHTPATH MANAGEMENT LLC, BRIAN K. MARTINSEN, MICHAEL A. CASTILLERO, FRANCINE A. LANAIA, and ERIC D. LACHOW,

    Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

ECF Case

No. 22 Civ. 3897 (LAK)

No. 22 Misc. 359 (LAK)

# THE GOVERNMENT'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR A MODIFICATION OF THE RECEIVERSHIP ORDER

JAY CLAYTON
United States Attorney for the
Southern District of New York
Attorney for the United States
of America

Allison Nichols
Adam S. Hobson
Matthew R. Shahabian
Assistant United States Attorneys

    *- Of Counsel -*

**Table of Contents**

PRELIMINARY STATEMENT ................................................................................................ ii
BACKGROUND ............................................................................................................................ 2
    I.    The SEC Action Against StraightPath and the Individual Defendants ............................ 2
    II.    The Criminal Indictment Charging Martinsen, Castillero, and Lanaia ........................... 3
    III.    The Grand Jury Subpoena Litigation in the Fall of 2022 ............................................ 6
DISCUSSION .............................................................................................................................. 10
CONCLUSION ............................................................................................................................ 15

**Table of Authorities**

*Commodity Futures Trading Comm'n v. Standard Forex, Inc.*,
  882 F. Supp. 40 (E.D.N.Y. 1995) ................................................................. 10, 11

*Commodity Futures Trading Comm'n v. Weintraub*,
  471 U.S. 343 (1985) ........................................................................................ 12, 13

*In re: Three GJ Subpoenas, dated Jan. 5, 1988*,
  847 F.2d 1024 (2d Cir. 1988) ............................................................................... 14

Restatement (Third) of the Law Governing Lawyers § 73 ...................................................... 12

*United States v. Shapiro*,
  No. 06 Cr. 357 (KMW) (FM), 2007 WL 2914218, (S.D.N.Y. Oct. 1, 2007) ...................... 13

**PRELIMINARY STATEMENT**

Intervenor the United States of America, by and through the United States Attorney for the Southern District of New York ("the Government"), respectfully submits this memorandum in support of a motion to modify the Receivership Order in this matter to allow the Receiver, not the former officers of the company, to hold, assert, and waive the corporate privilege. This modification is necessary because the former corporate officers—defendants Brian Martinsen, Francine Lanaia, and Michael Castillero—have invoked attorney-client privilege to withhold incriminating corporate communications, primarily text messages between co-conspirators, from both the court-appointed Receiver and from the Government in connection with the Government's previously issued grand jury subpoenas and related motion to compel litigation.

Defendants' blanket assertion of privilege is untenable and unfounded. Corporate privilege belongs to the corporation, and not to its individual officers. When that corporation enters receivership, control over privilege decisions typically transfers to the receiver, not individual former officers, because the receiver manages the corporation's day-to-day affairs and assumes fiduciary obligations, while its former officers do not. Martinsen's, Lanaia's and Castillero's continued assertion of privilege over corporate communications lacks legal foundation and improperly interferes with both the receivership and the Government's criminal prosecution in *United States v. Castillero, et al.*, 23 Cr. 622 (JMF).

Consistent with Judge Furman's instruction in previous motion to compel litigation in 22 Misc. 359 that the "path" to get relevant corporate documents lies "through the Receiver," (Ex. A hereto, Feb. 8, 2023 Conf. Tr., hereinafter "Tr." at 4, 5), the Government asks this Court to modify the existing Receivership Order to specify that the Receiver—not Martinsen, Lanaia, and Castillero—holds the authority to assert or waive attorney-client privilege on behalf of

1

StraightPath Venture Partners, LLC ("StraightPath") and its related entities (together, the "StraightPath Entities"). This modification will allow the Government to obtain the corporate records Martinsen, Lanaia, and Castillero have previously withheld from both the Receiver and the Government. The Receiver and plaintiff Securities and Exchange Commission ("SEC") both consent to the motion to modify the Receivership Order.

## BACKGROUND

**I.     The SEC Action Against StraightPath and the Individual Defendants**

On May 13, 2022, the SEC filed a complaint in this civil enforcement action alleging that the StraightPath Entities and four individual defendants—Brian Martinsen, Francine Lanaia, Michael Castillero, and Eric Lachow (the "Individual Defendants")—violated the securities laws. (Compl., Dkt. 1). The SEC alleges that the defendants operated a fraud through nine investment funds that purported to offer retail investors access to pre-IPO shares in prominent private companies. (*Id.*). In reality, the SEC alleges, the defendants systematically oversold these investments, creating collective share deficits of at least $14 million, while secretly commingling investors' funds and making Ponzi-like payments to earlier investors seeking redemptions. (*Id.*).

In June 2022, as part of this action, the Individual Defendants and the SEC agreed that a receiver should be appointed to oversee corporate defendants StraightPath Venture Partners LLC, StraightPath Management LLC, and each of the nine StraightPath Funds (the "Receivership Entities"). On June 14, 2022, the Court appointed Hon. Melanie L. Cyganowski (the "Receiver") to oversee the Receivership Entities. (Dkt. 56, the "Receivership Order"). Broadly, the Receiver was tasked with marshalling assets of the Receivership Entities, proposing a liquidation plan for their property, and proposing a distribution plan to return assets to StraightPath's investors. While the Receivership Order gave the Receiver the power and authority to act for the Receivership

Entities and to take custody, control, and possession of the Receivership property, it also limited her authority and preserved the authority of the Individual Defendants to direct the activities of the Receivership Entities and to object to the Receiver's actions in service of the Receivership Entities.

The Receivership Order first prohibited the Receiver from waiving any privilege held by the Receivership Entities that existed prior to the Receiver's appointment. (Receivership Order 6). The Receiver may waive privilege only with Court authorization; the Individual Defendants have the right to oppose such a motion. (Receivership Order 6).

Second, the Receiver, her counsel, and others working at her direction were prohibited from receiving or reviewing privileged documents—even corporate documents. (Receivership Order 6). Rather than simply taking custody of the Receivership Entities' books and records, the Receiver obtained only those materials produced to her by the Individual Defendants after a privilege review. (Receivership Order 6; *see also* Dkt. 144 (Receiver's Jan. 6, 2023 Rpt. on Commingling and Share Shortfall) at 12-13). The Government understands that this was a difficult and adversarial process, and that the Individual Defendants did not initially provide a privilege log to the Receiver, making it difficult to understand what was being withheld and which privileges were being asserted.

On October 18, 2022, the Government moved to intervene in this litigation and stay discovery in order to avoid prejudice to its then-pending criminal investigation into substantially similar conduct. (Dkt. 101, 102). The Court granted the discovery stay (Dkt. 105), which was later extended several times.

## II. The Criminal Indictment Charging Martinsen, Castillero, and Lanaia

On November 28, 2023, a grand jury returned an Indictment charging Martinsen, Castillero, and Lanaia with criminal securities fraud violations (the "Criminal Case"). The

3

Indictment alleges that from at least in or about 2017 through at least in or about April 2022, Castillero, Lanaia, and Martinsen engaged in a scheme to defraud investors in a group of nine related private funds known generally as the "StraightPath Funds." (Indictment ¶ 1). The defendants, and others working at their direction, used "boiler room"-style call centers to market the StraightPath Funds, including to non-professional investors, as presenting an opportunity to invest in privately held companies expected to go public in the near future ("pre-IPO companies"). (Indictment ¶ 1). The defendants purported to offer investors the chance to acquire shares in pre-IPO companies at favorable prices in advance of an anticipated public offering, at which time, they claimed, the shares would be worth significantly more. (Indictment ¶ 1).

Although the defendants and their agents represented to existing and prospective investors in the StraightPath Funds that the defendants would earn no upfront fees in connection with the StraightPath Funds' acquisition of pre-IPO shares, in reality, and contrary to their fiduciary duties, the defendants acquired the shares and then sold them to investors at arbitrarily inflated and excessive prices without disclosing to investors the nature or extent of the markup. (Indictment ¶ 2). The defendants also misled investors regarding the nature of their investments and hid the involvement of Castillero and Lanaia, who had been previously barred from the securities industry by the Financial Industry Regulatory Authority ("FINRA"). (Indictment ¶ 2).

In order to generate interest in the StraightPath Funds among retail investors, Castillero, Lanaia, and Martinsen used finders, or "referral agents," to pitch prospective investors and thereafter to serve as the investors' primary point of contact. (Indictment ¶ 5). In turn, these agents used "boiler room"-style call centers to cold-called potential investors, many of whom were not sophisticated, and give aggressive sales pitches using notes and pitch scripts approved by the defendants. (Indictment ¶ 5). Contrary to the defendants' claim that they and their agents did not

make money unless and until investors received a profit on their investments, SPVP paid referral agents a commission, typically a 10 to 15 percent front-end fee based on the amount of the investment, plus a portion of the carried interest on the back end. (Indictment ¶ 5).

In addition to misleading prospective investors about the compensation paid to referral agents, Castillero, Lanaia, and Martinsen defrauded investors in the StraightPath Funds, for which they acted as fiduciaries, by (a) charging investors excessive and undisclosed markups on share prices of pre-IPO companies, which benefited the defendants and their associates at the expense of investors and the StraightPath Funds; (b) routinely overstating to investors the number of pre-IPO shares that backed the interests in StraightPath Funds they sold; (c) falsely representing that investors were investing in a specific "Series" within a specific StraightPath Fund and that their contributions correlated to specific shares of specific pre-IPO companies, when, in actuality, investor funds were commingled across Series and Funds and used for purposes not disclosed to investors, including to pay out other investors and to compensate the defendants and their associates; (d) falsely representing that Eric Lachow, referred to in the Indictment as "Fund Manager-1," acted as manager of each of the StraightPath Funds and the SP Adviser when, in actuality, Castillero, Lanaia, and Martinsen performed the functions ascribed to the Fund Manager in StraightPath's offering documents including, among other things, using an email address in Lachow's name to correspond with investors; and (e) otherwise actively taking steps to prevent investors from learning about Lanaia's and Castillero's leadership roles in light of the fact that both had been suspended and later permanently barred from involvement in the securities industry by FINRA. (Indictment ¶¶ 6, 8).

The fraud orchestrated by Castillero, Lanaia, and Martinsen allowed the defendants to take in approximately $386 million from investors while paying themselves at least $74 million in

5

investor funds and additional tens of millions to their associates and referral agents. (Indictment ¶ 7). In all, the defendants diverted approximately 30 percent of investors' capital contributions to pay themselves and their associates. (Indictment ¶ 7).

Throughout the StraightPath Funds' operation, Castillero, Lanaia, and Martinsen actively took steps to conceal the true nature of SPVP's operations not only from investors but also from regulatory bodies, including FINRA and the SEC. (Indictment ¶ 9). For example, Castillero, Lanaia, and Martinsen discussed making the Fund Manager the scapegoat with the SEC, in the event the SEC identified any problems with StraightPath's operations. Martinsen then added, "Fran [Lanaia] is going to wamboosle the sec lady tomorrow. They will talk weather for 45 min and the lady will forget what she's looking for." (Indictment ¶ 9.c). Martinsen and Castillero also agreed to and did delete certain email records that had been called for by an SEC subpoena out of concern that "[a]n asshole regulator would have a field day" with the emails and then falsely represented to SEC staff that the emails had never existed. (Indictment ¶¶ 9.d, 22-27).

Trial in the Criminal Case is currently scheduled to begin on October 20, 2025, before Judge Furman.

## III. The Grand Jury Subpoena Litigation in the Fall of 2022

In September 2022, while its investigation was ongoing and before the Indictment had been returned, the Government issued a grand jury subpoena to the Receiver in her capacity as a custodian of SPVP documents (the "September Subpoena"). The Receiver produced nearly 700,000 corporate documents, including email communications. After this production, counsel for the Individual Defendants[1] asserted privilege over 60,000 documents the Receiver had produced,

---

[1] At the time, the same counsel represented all Individual Defendants. Presently, that counsel represents Martinsen, Lanaia, and Castillero. Counsel previously indicated to the Government that

6

which they later downgraded to privilege assertions concerning 37 documents, as set forth in a privilege log. (Ex. B hereto, or "Email Privilege Log"). Without conceding that the Individual Defendants had a valid basis to assert the corporate privilege,[2] the Government agreed to wall off the documents pending later resolution of the privilege question.

The Government next sought text message communications. The records produced by the Receiver did not include the Individual Defendants' text messages relating to StraightPath's corporate business because the Individual Defendants had not produced them to the Receiver. In November 2022, the Government served a second grand jury subpoena on the Receiver (the "November 2022 StraightPath Subpoena") that called for text and other instant messages concerning seven delineated topics related to StraightPath's operations—in other words, StraightPath corporate documents. Because the Government knew from its conversations with all relevant counsel that the Receiver did not have these messages but that counsel for the Individual Defendants did have them, the Government also served the November 2022 StraightPath Subpoena on Martinsen through counsel. Martinsen's counsel confirmed that they had custody and control over the text messages responsive to the November 2022 StraightPath Subpoena but denied that they have the authority to respond to a subpoena directed to StraightPath. Counsel indicated by letter that it would comply with a subpoena directed to Martinsen personally. The Government reissued the November 2022 StraightPath Subpoena to Martinsen personally, at which point counsel indicated instead that Martinsen would assert an act of production privilege.

---

it intended to withdraw from representing Castillero in this matter, but that withdrawal has not occurred.

[2] The Email Privilege Log did not specify whose privilege is being asserted, but it appears plain from the description column that the communications could only relate to StraightPath's privilege, not the Individual Defendants.

7

On December 16, 2022, the Government moved to compel against Martinsen, arguing that Martinsen and the other Individual Defendants (then all represented by the same counsel) remained StraightPath document custodians, as they had exclusively retained the corporate text messages, refused to produce them to the Receiver, and claimed the right to assert the corporation's privilege. As the Government argued, "By withholding those corporate documents from the Receiver and then purporting to lack the authority to respond to a subpoena issued to the corporation, the Individual Defendants are attempting to put the text messages beyond the reach of the Grand Jury." (22 Misc. 359, ECF No. 3, at 16).

While the litigation was pending, Martinsen again changed his position with respect to act of production privilege and produced some text messages. Later he also produced a privilege log. (Ex. C hereto, or "Text Privilege Log"). In the Text Privilege Log, Martinsen asserted not only his own privilege, but also the corporation's privilege and the individual privileges of Lanaia, Castillero, and StraightPath employee Melissa Machado—all of whom were then represented by the same counsel. Martinsen's productions did not fully satisfy the pending subpoenas, and the Government continued to assert that by withholding the messages from the Receiver and by asserting the corporation's privilege, Martinsen was a corporate custodian who need comply with a subpoena calling for corporate documents.

Judge Furman disagreed and denied the motion to compel without prejudice to renewal. Judge Furman found that the Receivership Order explicitly dismissed Martinsen as an officer of StraightPath and that he therefore lacked any authority to act on behalf of the entity, including receiving service of or complying with a subpoena directed to StraightPath. (Tr. 3-4 (referring to Martinsen as "John Roe" and StraightPath as the "entity"). Judge Furman indicated that to the extent Martinsen had corporate information or documents in his possession, the "path to get them

is through the Receiver," noting that he had conferred with this Court, who "shares my view that the path here is through the Receiver." (Tr. 4, 5). Judge Furman further indicated, that even if the Receiver did not have the documents called for by the subpoena, "she's not without recourse if you serve a lawful subpoena on her. She's required, by virtue of her receivership position, to comply with it. And she has the ability to comply with it, at least, by virtue of seeking a modification—or seeking leave of court to produce those documents." (Tr. 8). Judge Furman transferred the litigation to this Court, noting that the Government should be "entitled to most, if not all, of what it's seeking," subject to litigation over applicable privileges. (Tr. 11).

After Judge Furman's order, the parties continued to meet and confer over the scope of the Government's subpoena demands. Lanaia and Castillero, through their criminal counsel, produced additional text messages to the Government on a voluntary basis. Those negotiations partially resolved the dispute, but the defendants continue to withhold corporate text messages from the Receiver and the Government; the voluntary productions from Lanaia and Castillero did not include the messages on the Text Privilege Log. Additionally, neither the Government nor the Receiver has any way of knowing whether the Individual Defendants have withheld other corporate documents that have not appeared on any privilege log.

With trial approaching in October 2025, the Government now seeks to resolve this dispute by moving to modify the Receivership Order to allow the Receiver to obtain the relevant emails, text messages, and any other previously withheld corporate documents, from Martinsen, Lanaia, and Castillero. The Government intends to issue a Rule 17(c) trial subpoena to the Receiver for corporate text messages, emails, and documents, including for the previously withheld corporate documents in the possession, custody, and control of Martinsen, Lanaia, and Castillero as corporate custodians. The Government also intends to seek Judge Furman's leave for an early return date of

9

this trial subpoena in order that any privilege litigation may be resolved prior to trial. In short, the instant motion, together with the Rule 17(c) request before Judge Furman, will permit the parties to "cover the waterfront and litigate whatever needs to be litigated" (Tr. 13-14) well in advance of the October 20, 2025 trial.

## DISCUSSION

The Court should modify the Receivership Order to assign the Receiver control of the corporate privilege. While there is nothing improper about an order, like the Receivership Order, that delegates some but not all of an entity's essential management roles to a receiver, *see Commodity Futures Trading Comm'n v. Standard Forex, Inc.*, 882 F. Supp. 40, 43 (E.D.N.Y. 1995) (noting that the common law does not mandate that the court grant a receiver the right to assert or waive the defunct corporation's attorney-client privilege), a modification of the Receivership Order is warranted now. The modification would benefit the Receiver and the StraightPath entities by assigning the privilege to the party with control over the corporation, would prevent the Individual Defendants from continuing to use the privilege to frustrate the Receiver's purpose and to elevate their own interests over those of the Receiver, and would allow the Receiver to comply with the Government's subpoenas.

First, the proposed modification would assign the privilege to the party with management of the companies and the need to possess it. The Receiver was appointed to "oversee the assets of the funds and the StraightPath Entities," which, under the management of the Individual Defendants, obtained approximately $393 million in investor funds, while using only about $272 million to acquire Pre-IPO shares, as promised to investors who contributed funds. (Dkt. 408, (Mem. and Order Approving Receiver Plan) at 1-2; *see also* Dkt. 144 (Receiver's Jan. 6, 2023 Rpt. on Commingling and Share Shortfall) at 13). The Receiver has determined that investor funds were

commingled, used for purposes other than those intended, and "there was a substantial shortfall in the Pre-IPO Shares actually acquired." (*Id.*; *see also* Dkt. 144). After working diligently to determine the state of the StraightPath Entities' books and records, track commingled funds and Pre-IPO shares, and determine the discrepancy between the shares investors believed they had and the shares that the Individual Defendants actually caused to be purchased, the Receiver has since "formulated a proposed plan of distribution of the receivership assets," considered investor comments, and moved for an order approving the proposed plan, which the Court granted and which is now being implemented. (Dkt. 408 at 2, 11).

The Receiver's lack of control over the privilege has hindered its work and may frustrate its conclusion. In her January 2023 Report on Commingling and Share Shortfall, for example, the Receiver noted that "the Individual Defendants continue to withhold numerous documents from the Receiver" on privilege grounds. (Dkt. 144 at 12). She explained that these privilege assertions have potentially affected her findings, as StraightPath's pre-receivership counsel had advised the StraightPath Funds "on a wide variety of matters prior to the Receivership," including the Funds' "purchase of pre-IPO Shares from third parties," in some cases representing both the Funds as purchaser and the seller in these transactions. (Dkt. 144 at 12-13 & 13 n.13). Additionally, although no formal adversarial proceeding has been filed by the Receiver against any of the Individual Defendants, the Receiver has entered into a tolling agreement with the three Individual Defendants charged in the Indictment. (Dkt. 442 at 13). Any such adversary proceeding, if it materializes, could be made significantly more complicated if the Individual Defendants continue to hold the privilege.

By contrast to the Receiver's interests, there is no good reason for the Individual Defendants to control the corporate privilege. Martinsen, Lanaia, and Castillero do not continue to

hold any managerial role and, in fact, Martinsen disavowed having any ongoing corporate function at StraightPath during the prior litigation in order to avoid an obligation to produce corporate records. (22 Misc. 359, Dkt. 30 at 2). As a result, the Individual Defendants' corporate responsibilities consist of holding the privilege (and objecting to the Receiver's work (*e.g.*, Dkt. 309, 382)). Given their total lack of day-to-day company responsibilities, it is hard to contemplate for what productive purpose the Individual Defendants need to hold the StraightPath Entities' privilege or how any corporate, rather than personal, interest is served by their use of it.

Second, the modification would be consistent with common law doctrine regarding which agents of a corporation are best positioned to invoke its privileges. It is black-letter law that a former officer or director of a corporation "retains no control over the corporation's privilege." *Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 349 n.5 (1985); "The Privilege for an Organization Client," Restatement (Third) of the Law Governing Lawyers § 73(k) (2000). For a solvent corporation, "the power to waive the corporate attorney-client privilege rests with the corporation's management and is normally exercised by its officers and directors" who must "must exercise the privilege in a manner consistent with their fiduciary duty to act in the best interests of the corporation and not of themselves as individuals." *Id.* at 348-49. Normally, "when control of a corporation passes to new management, the authority to assert and waive the corporation's attorney-client privilege passes as well." *Id.* at 349. As a consequence, "[d]isplaced managers may not assert the privilege over the wishes of current managers, even as to statements that the former might have made to counsel concerning matters within the scope of their corporate duties." *Id.*

The *Weintraub* case concerned whether the trustee of a bankrupt corporation could waive the corporation's attorney-client privilege as to pre-bankruptcy communications. 471 U.S. at 345.

There, as here, a regulator was investigating alleged pre-bankruptcy misappropriation of customer funds by the corporation's former officers and employees, among other fraudulent activities. *Id.* at 346. Two former officers of the corporation sought to prevent the trustee from waiving the corporation's privilege as to subpoenaed testimony by the former corporate general counsel. *Id.* at 346-47. In concluding that the trustee, not the former management, should control the privilege, the Supreme Court considered primarily which actor's duties more closely resembled those of a corporation's management and found that the trustee exercised most of the duties of management, while the former directors and officers retained virtually no management powers. *Id.* at 351-53. Courts have since extended *Weintraub*'s core principle beyond the bankruptcy context. *United States v. Shapiro*, No. 06 Cr. 357 (KMW) (FM), 2007 WL 2914218, at *5 (S.D.N.Y. Oct. 1, 2007) (noting that courts have held that "privilege waivers by receivers and trustees are effective despite the attempts of former corporate officers and directors to shield their corporations' allegedly privileged communications from disclosure.") (collecting cases). In sum, *Weintraub* counsels that allowing former corporate insiders to retain the privilege could lead to perverse results, particularly in situations where the former officers and directors may have engaged in fraud.

> In seeking to maximize the value of the estate, the trustee must investigate the conduct of prior management to uncover and assert causes of action against the debtor's officers and directors. It would often be extremely difficult to conduct this inquiry if the former management were allowed to control the corporation's attorney-client privilege and therefore to control access to the corporation's legal files. *To the extent that management had wrongfully diverted or appropriated corporate assets, it could use the privilege as a shield against the trustee's efforts to identify those assets.* The [] goal of uncovering insider fraud would be substantially defeated if the debtor's directors were to retain the one management power that might effectively thwart an investigation into their own conduct.

471 U.S. at 353-54 (internal citation omitted) (emphasis added). The Individual Defendants have created just such a circumstance here, where they wield the company's privilege in derogation of

13

the Receiver's work, in service of their own legal interests, and in obstruction of the Government's investigation.

A modification of the Receivership Order would allow the Receiver to comply with the Government's subpoenas. As with the Government's prior grand jury subpoenas, the anticipated Rule 17(c) subpoena calls for corporate documents and communications that the Individual Defendants have withheld from the Receiver. Because those documents are within the Receiver's control insofar as the Receivership Order grants her authority to seek modifications of the Receivership Order, the Receiver must comply with the subpoena, as Judge Furman previously found. The requested modification would allow her to do so. *See In re: Three GJ Subpoenas, dated Jan. 5, 1988*, 847 F.2d 1024 (2d Cir. 1988) ("A corporation or partnership may be required to produce its business records even if the records are in the hands of an officer or principal who refuses to turn them over to it. Otherwise, when the possibility of a subpoena loomed, a business with no Fifth Amendment privilege could avoid the obligation to produce its records simply by entrusting them to an employee or partner who could invoke his own production privilege and refuse to relinquish them.").

In light of the circumstances and in accordance with common law preferences, the Receivership Order should be modified to empower the Receiver, not the Individual Defendants, to assert or waive the company's privilege. Such a modification would assign the privilege to the party that actually manages the company's remaining affairs and would remove the privilege from the parties whose interest in wielding it is personal and whose use of it has been to frustrate the Government's investigation and the Receiver's work. The Receiver and the SEC both consent to this modification.

**CONCLUSION**

Martinsen, Lanaia, and Castillero have used the Receivership Order to muddle relatively straightforward rules about corporate privilege to prevent both the Receiver and the Government from obtaining corporate documents to which each should otherwise have been entitled—the Receiver by virtue of her role stepping into the shoes of the corporation and the Government by virtue of its previously issued subpoenas. The defendants, however, should not be permitted to withhold corporate communications from the Receiver or the Government on the basis of supposed personal attorney-client privileges in communications they undertook as corporate officers. This privilege dispute requires resolution ahead of the October 20, 2025 criminal trial.

The Government intends to issue a Rule 17(c) trial subpoena to the Receiver so that the Government may obtain the corporate records. But the first step toward resolving these disputes is to return the corporate privilege to the corporation by modifying the Receivership Order to vest authority to hold, assert, and waive the corporation's privilege with the Receiver, and to enable the Receiver to obtain previously withheld corporate records. The Government also intends to seek leave of Judge Furman to issue a Rule 17(c) subpoena returnable sufficiently in advance of trials so that any remaining privilege issues may be litigated. Accordingly, the Government respectfully requests this Court modify the Receivership Order to allow the Receiver to possess pre-

receivership privileged documents and exclusively control assertions or waivers of the Receivership Entities' privilege going forward.

Dated: New York, New York
      May 28, 2025

Respectfully submitted,

JAY CLAYTON
United States Attorney

By: _____
Allison Nichols
Adam S. Hobson
Matthew R. Shahabian
Assistant United States Attorneys
26 Federal Plaza
New York, New York 10007
Telephone: (212) 637-2366