**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>-v-<br><br>STRAIGHTPATH VENTURE PARTNERS LLC, STRAIGHTPATH MANAGEMENT LLC, BRIAN K. MARTINSEN, MICHAEL A. CASTILLERO, FRANCINE A. LANAIA, and ERIC D. LACHOW,<br><br>Defendants. | : | No. 1:22-cv-03897-LAK |

**EIGHTEENTH INTERIM APPLICATION OF STOUT RISIUS ROSS, LLC FOR ALLOWANCE OF COMPENSATION INCURRED DURING THE PERIOD JULY 1, 2026 THROUGH AND INCLUDING SEPTEMBER 30, 2026**

Stout Risius Ross, LLC ("***Stout***" or "***Applicant***") as financial advisor to Melanie L. Cyganowski in her capacity as receiver (the "***Receiver***") for StraightPath Venture Partners LLC ("***SPVP***"), StraightPath Management LLC ("***SPM***"), SP Ventures Fund LLC, SP Ventures Fund 2 LLC, SP Ventures Fund 3 LLC, SP Ventures Fund 4 LLC, SP Ventures Fund 5 LLC, SP Ventures Fund 6 LLC, SP Ventures Fund 7 LLC, SP Ventures Fund 8 LLC, SP Ventures Fund 9 LLC (collectively, the "***SP Funds***" and together with SPVP and SPM, the "***Receivership Entities***" or "***StraightPath***"), hereby submits this Eighteenth Interim Application (the "***Eighteenth Interim Application***" or "***Application***") for Allowance of Compensation Incurred During the Period from July 1, 2026 through and including September 30, 2026 (the "***Application Period***").

Stout requests interim approval of fees in the amount of $214,804.80 for the Application Period.

The Eighteenth Interim Application contains the following sections:

**Section I** provides a preliminary statement of Stout's activities during the Application Period.

**Section II** summarizes the background of the Receivership and also contains case status information required by Section D.2 of the Billing Instructions for Receivers in Civil Actions Commenced by the U.S. Securities and Exchange Commission (the "***SEC***" and the "***Billing Guidelines***"). Section II also describes each exhibit to this Eighteenth Interim Application and the reduction in fees agreed to by Stout in connection with its retention as financial advisor to the Receiver.

**Section III** contains a summary of the fees and expenses requested and contains a narrative of the work that Stout professionals performed under each activity category, as required by Sections D and E of the Billing Guidelines.

**Section IV** contains a summary of all expenses for which Applicant seeks reimbursement and the procedures and policies adopted by Applicant to ensure compliance with Section E of the Billing Guidelines.

**Section V** briefly summarizes the standards to be applied by the Court in determining fee awards in SEC receivership cases.

**Section VI** provides a description of the allowed fees that the Applicant has agreed to hold back with respect to the Eighteenth Interim Application.

## I. PRELIMINARY STATEMENT

During the Application Period, Stout assisted the Receiver and her team[1] with:

[1] The Court has entered orders approving the retention of the Receiver's team of professionals which includes Otterbourg P.C. ("***Otterbourg***") as her legal counsel [Dkt. 67], Stout as her financial advisor [Dkt. 71], Stretto, Inc. ("***Stretto***") as her claims and noticing agent [Dkt. 72], Berkeley Research Group, LLC ("***BRG***") as her tax advisor [Dkt. 96], and Liquid Advisors, Inc. as her investment advisor [Dkt. 258] ("***Liquid Advisors***" along with Otterbourg, Stout, Stretto and BRG, the "***Receivership Team***").

(i) the implementation of the Receiver's Plan of Distribution [Dkt. 368-1] (the "***Plan***"), which this Court approved by order dated November 26, 2024 [Dkt. 408] (the "***Plan Approval Order***")[2];

(ii) assisting the Receiver in her preparation of the Victim Impact Statement for the L&G/Legend Founders' Criminal Action and responses to questions received thereto;[3]

(iii) preparing for the redemption of StraightPath's equity interest in an SPV (as that term is defined in the Plan) through which the Receivership Entities had indirectly acquired shares of Zipline International Inc. ("***Zipline***") and the sale of directly-held shares of Zipline;

(iv) preparing for the transfer of investments in Triller Group Inc. ("***Triller***").

(v) preparing financial analysis and monitoring Receivership assets for sale eligibility under the Plan;

(vi) the preparation and continuing administration of distributions to Investors and Claimants, including Silo and Pot Components, related to cash proceeds received for StraightPath's investments in Scopely, Inc. ("***Scopely***"), Rubrik, Inc. ("***Rubrik***"), Escrow Funds, Space Exploration Technologies, Corp. ("***SpaceX***"), Airbnb, Inc. ("***Airbnb***"), Grab Holdings Limited ("***Grab***"), 23andMe Holding Co. ("***23andMe***"), Palantir Technologies, Inc. ("***Palantir***"), SoFi Technologies, Inc. ("***SoFi***"), Blend Labs, Inc. ("***Blend***"), Chime Financial, Inc. ("***Chime***"), and Klarna Holding AB, Corp ("***Klarna***").

---

[2] Any capitalized terms not defined in this Application have the definitions ascribed thereto in the Plan.

[3] L&G/Legend Founders' Criminal Action refers to the sentencing of parties whom were involved in misconduct relative to StraightPath entities and Legend Venture Partners LLC and its affiliated investment funds.

(vii) implementing settlement agreements with Claimants;

(viii) maintaining Investor and Claimant biographical data, interest and/or claim records, and Receivership distribution records;

(ix) implementing financial controls, reviewing bank activity, and maintaining financial statements, including the SEC Standardized Fund Accounting Reports ("***SFAR***");

(x) managing the Receivership Entities' expenses and accounts payable;

(xi) preparing the quarterly SEC Standardized Fund Accounting Report;

(xii) continuing to inventory and marshal the Shares[4] ("***Shares***") in specific private companies (each, a "***Pre-IPO Company***") and prepare for potential liquidity events of certain Pre-IPO Companies;

(xiii) analyzing tax issues related to the Receivership and the preparation of financial data for tax filings;

(xiv) researching and analyzing StraightPath Pre-IPO asset records and preparing confirmation correspondence;

(xv) communicating with Investors and purported Claimants of the Receivership Entities, including assignments of beneficial interest;

(xvi) preparing various Receivership correspondence and communications for posting to the Receivership website and/or sending physical or electronic mailing; and

[4] Although this Application generally refers to "Shares" in Pre-IPO Companies, as described by the Receiver in her status reports to the Court, the Receivership Entities' interests in Pre-IPO Companies are not necessarily actual shares of stock in Pre-IPO Companies. As described below and in prior Reports filed by the Receiver, StraightPath purchased Pre-IPO interests using various methods and the interests acquired are varied, including but not limited to: (i) interests in special purpose vehicles ("***SPVs***"), which are non-StraightPath entities controlled by third-parties that invested in Pre-IPO Companies; (ii) forward contracts; (iii) economic interest agreements; and (iv) direct shares. Solely for convenience, this Application refers to "Shares" to include all such interests acquired by the Receivership Entities.

(xvii) participating in regular calls and meetings with the Receiver and the Receivership Team to coordinate strategy, address ongoing issues and ensure efficient administration of the Receivership Estate.

## II. CASE BACKGROUND AND STATUS

### A. Case Background

Stout hereby incorporates by reference the Case Background and Status Section that the Receiver and Otterbourg set forth in the *Eighteenth Joint Interim Application of The Receiver and Otterbourg P.C. for Allowance of Compensation and Reimbursement of Expenses Incurred During the Period July 1, 2026 through and including September 30, 2026*, including the defined terms therein.

*Retention of Applicant*

The Receivership Order authorizes the Receiver to engage professionals to assist her in fulfilling her duties. On July 14, 2022, the Court approved Stout's retention effective as of June 14, 2022. [Dkt. 71].

### B. Case Status[5]

In accordance with Section D.2 of the Billing Guidelines, Applicant states as follows:

(a) As of September 30, 2026, the Receivership bank and securities accounts held approximately (1) cash of $28,659,616.02 comprised of (i) cash in the amount of $43,398.89 that had been transferred from the Receivership Entities' pre-Receivership accounts or held in brokerage accounts; (ii) cash in the amount of $893,337.23 from interest income; (iii) $22,497,004.96 allocated to the Reserve Amount resulting from the liquidation of Receivership

[5] The Applicant bases the information in this section primarily on the Receivership's SFAR covering the period July 1, 2026 through September 30, 2026.

Assets, Escrow Funds, and other litigation recovery; and (iv) $5,225,874.94 in pending distributions resulting from the Receiver's liquidation of certain StraightPath equity assets, Escrow Funds, and other litigation recovery; and (2) public securities valued in the amount of $20,539.48 as of September 30, 2026.

(b) As of the end of the Application Period (September 30, 2026), the Court-approved interim fees and expenses of the Receivership Team are approximately $18,095,396.27 in fees and $250,597.63 in expenses, of which (i) the aggregate amount of $5,164,063.46 is subject to holdback, and (ii) and the aggregate amount of $13,181,930.45 (including expenses) is not subject to holdbacks (the "***Previously Approved Non-Holdback Amount***"). As of the end of the Application Period (September 30, 2026), the Receiver has paid $12,212,030.51 of the Previously Approved Non-Holdback Amount. As of the end of the Application Period (September 30, 2026) and continuing through the date of this Application, $969,899.94 of the Previously Approved Non-Holdback Amount remains unpaid (the "***Unpaid Previously Approved Non-Holdback Amount***").[6]

(c) As permitted by the Receivership Order, the Receiver paid professional fees and expenses of the Receivership in the amount of $1,150,000.00 using the Escrow Funds, the allowed amount without Court approval.

(d) The fees and expenses for the Receiver, Otterbourg, Stout, Stretto, and BRG that have been incurred during the Application Period for which approval is sought through this Application is $857,917.62.

(e) Cash disbursements and receipts:

[6] The Receiver may, in the future, pay the Unpaid Previously Approved Non-Holdback Amount in accordance with prior orders of the Court.

i. Cash disbursements during the Application Period totaled $690,280.66. This amount consisted of (i) $217,331.50 in distributions to Investors and Claimants[7]; (ii) $6,960.70 in business expenses (including data and hosting fees and bank and technology fees); and (iii) $465,988.46 in Court-approved payments of professional fees to the Receiver, Otterbourg, Stout, Stretto, and BRG.

ii. Cash receipts during the Application Period totaled $171,383.53, consisting of (i) interest income of $171,383.53 from Receivership accounts.

(f) As of September 30, 2026, the value of the public securities held by the Receivership Estate equals $20,539.48.

(g) As of September 30, 2026, the primary assets of the Receivership Estate consisted of the following:

i. Cash, cash equivalents, and securities of approximately $28,680,155.50 as described above; and

ii. Pre-IPO Shares in an undetermined value, including indirect holdings in SPVs or through forward contracts and economic interest agreements, and direct Shares holdings.

The current value of the Receivership Entities' investment portfolio is difficult to determine and is subject to change based on the market value of Pre-IPO Shares.[8]

[7] Distributions to Investors and Claimants may include distributions reported in prior quarters that were subsequently stopped and reissued.

[8] The Receivership is a Qualified Settlement Fund for purposes of tax reporting. *See* Plan Approval Order. As required for purposes of Qualified Settlement Fund tax reporting, at the Receiver's instruction, Stout has valued the Receivership Entities' investment portfolio as of June 14, 2022, the date that the Receivership was created.

(h) Based on *The Receiver's Fourteenth Status Report* [Dkt. 627], Stout understands that the Receiver is continuing to investigate potential liquidated and unliquidated causes of action, if any, held by the Receivership Entities.

(i) With respect to formal claims proceedings, and as further explained below, during the Application Period, the Receiver continued her implementation of the Resolution Procedures.

(j) Applicant cannot at this time state when the Receiver will deem it appropriate to seek the conclusion of this case.

## III. FEES AND EXPENSES REQUESTED

In connection with the Application Period, Applicant requests interim compensation in the amount of $214,804.80.

The fees requested are determined on the basis of the hours worked by professionals, and the hourly rates in effect at the time the services were rendered, as modified by a public service accommodation, described below.

Pursuant to the public service accommodation applicable to this matter, a 10% accommodation has been applied across the board to Stout's recorded time.

Pursuant to the public service accommodations described above, the recorded time charges for Stout have been reduced from $238,672.00 to $214,804.80, a reduction in the amount of $23,867.20. This does not include other voluntary reductions in the work recorded with respect to certain matters which are taken in connection with Applicant's customary review of its recorded time detail.

In accordance with Section F.3.j. of the Billing Guidelines, long distance travel time is not reimbursable unless the Applicant is performing work properly billed as such. During the Application Period, no Stout professionals traveled long distance in connection with the Receivership.

In addition, as required by the Billing Guidelines, Stout's time detail was submitted to the SEC for its review.

This Eighteenth Interim Application includes certain exhibits:

(a) The SFAR for the period of July 1, 2026 through September 30, 2026 is attached as **Exhibit A** hereto.

(b) A Fee Schedule showing the total fees billed and hours worked during the Application Period by Stout professionals, along with the billing rates of each such professional, is attached as **Exhibit B** hereto.

(c) In accordance with Section D.3.c of the Billing Guidelines, a summary reflecting the total fees billed and the hours worked by each Stout professional organized by project category, including a chart showing the amounts being requested after application of the accommodations discussed above, is attached as **Exhibit C** hereto.

(d) In accordance with Section D.6 of the Billing Guidelines, the time records of Stout professionals for the Application Period, arranged in chronological order within each activity category, are attached as **Exhibit D** hereto.

(e) Attached as **Exhibit E** are tables reflecting the fee applications that were submitted by the Receiver and her Professionals for each calendar quarter, the amounts held back pursuant to Court Order, the amounts that have been paid, and the amounts outstanding.

(f) Also submitted herewith as **Exhibit F** is the Certification required by Section A.1 of the Billing Guidelines.

This is Stout's Eighteenth request for fees and expenses in this case. Stout received no retainer in this case.

In accordance with the Billing Guidelines, and as noted above, Stout's time records for the Eighteenth Interim Application were submitted to SEC counsel prior to filing the Application with the Court, and SEC counsel has reviewed such time records and fees and expenses being requested pursuant to this Application.

In accordance with Section E.3 of the Billing Guidelines, Applicant segregated its time during the Application Period into seven (7) project categories.[9] Narrative summaries of these activity categories follow:

**A. <u>Asset Disposition (Total Fees: $17,605.00)</u>**

For these project categories, during the Application Period Stout assisted the Receiver with control of the Receivership Entities' bank accounts, continuing to identify, marshal and inventory the Receivership Entities' Pre-IPO Shares, and communicating with certain counter-parties and other third-parties concerning the pre-Receivership purchase of Pre-IPO Shares by the Receivership Entities, preparing for liquidity events of certain Pre-IPO Companies, transferring certain Public Shares to the Receiver's custodial accounts, and liquidation of certain Public Shares.

*<u>Preparing for Liquidity Events of Pre-IPO Companies</u>*

During the Application Period, Applicant assisted in the review of various financial issues in connection with actual or potential public listings with respect to the Pre-IPO Companies. StraightPath's complicated investment structure (described by the Receiver in previous reports), involves multiple parties holding different types of interests, and poses potential risks to the Receiver's ultimate receipt of Shares or proceeds thereof. Additionally, during the Application

[9] As noted above, **Exhibit C** hereto shows each professional working on a particular project category and the total hours he or she billed in that category prior to the agreed-upon reduction to the aggregate recorded time charges. The fees for each activity category are stated herein *without* showing the agreed upon reductions.

Period, Applicant assisted in the communications with certain counter-parties to the Receivership Entities' agreements regarding Shares in Pre-IPO Companies.

While Stout assisted the Receiver in monitoring all of the Pre-IPO Companies in which StraightPath owns interests in Pre-IPO Shares and Public Shares, during the Application Period particular attention was focused on the following Companies:

**a. Zipline**

During the Application period, Stout assisted the Receiver in preparing to redeem StraightPath's equity interests in an SPV through which StraightPath held an indirect investment in Zipline. Stout also assisted the Receiver in preparing for the sale of the Zipline shares held directly by StraightPath.

**b. Triller**

During the Application Period, Stout assisted the Receiver with preparing for the transfer of StraightPath's interests in Triller.[10]

**B. Business Operations (Total Fees: $690.00), Accounting/Auditing (Total Fees: $28,681.00), and Case Administration (Total Fees: $59,035.00)**

These categories include tasks that may not be directly related to a specific investment or transaction but impact the overall administration of the Receivership Estate.

*Receivership Entities' Financial and Operational Information*

During the Application Period, Stout assisted the Receiver with managing the Receivership Entities' existing financial (bank and brokerage), business accounts, and books and records. Applicant reviewed the Receivership's operating expenses and as instructed by the Receiver made payments to various vendors.

---

[10] Additional background regarding the status of Triller is set forth more fully in the *Receiver's Fourteenth Status Report* [Dkt. 581].

*L&G/Legend Founders' Criminal Action's Victim Impact Statement*

During the Application Period, Stout assisted the Receiver with the preparation of the L&G/Legend Founders' Criminal Action Victim Impact Statement. In particular, Applicant provided the Receiver and her counsel with financial analysis relative to the Founders' StraightPath activity.

*Communications with Parties-In-Interest*

During the Application Period, to facilitate communications with parties-in-interest, Stout assisted with updating the dedicated website for this Receivership (https://www.straightpathreceivership.com). This website provides Investors and other interested parties with, among other things, periodic updates, access to Court documents, including status reports, and answers to frequently asked questions.

During the Application Period, Stout also assisted in monitoring the dedicated email address for inquiries (StraightpathReceiver@Otterbourg.com).

During the Application Period, Stout assisted with responding to phone calls and correspondence from Investors and other parties and communicating with those parties. As of the end of September 30, 2026, the Receivership Team has received or made over 8,650 individual communications by phone and email with parties-in-interest, including receiving inquiries from over 1,425 Investors and other parties-in-interest.

During the Application Period, Stout assisted the Receivership Team with coordinating, processing, and reviewing materials related to Investors' requests to transfer interest upon death or another event.

*Receivership Oversight*

Time during the Application Period was also devoted to the general oversight of the Receivership Entities and the Receivership Estate. The Receiver had meetings with members of the Receivership Team to facilitate the exchange of relevant information and to avoid duplication of effort. Stout assisted with the management of data, including managing a file transfer site and uploading documents to and granting access to the file transfer site.

**C. Status Report (Total Fees: $4,500.00)**

During the Application Period, Stout assisted in the preparation of the Fourteenth Status Report. The Receiver submitted the Fourteenth Status Report on July 27, 2026. [Dkt. 627].

**D. Claims Administration (Total Fees: $67,416.00)**

*Claims*

During the Application Period, Stout continued to assist the Receiver in implementing the Resolution Procedures, which the Court approved on March 30, 2023 [Dkt. 180]. As previously reported, pursuant to the Resolution Procedures, Stout assisted in the issuance of individualized Investor Statements to over 2,200 Investors in the Receivership Entities. Stout worked with the Receiver's Claims Agent to collect and review the tax forms (i.e., Form W-8 or W-9) that Investors and Claimants submitted. Stout communicated with Investors and claimants to correct the tax forms to ensure that they receive timely distributions. Stout also coordinated with other third-party institutions where Investors have custodial accounts to coordinate proper distribution for tax purposes.

During the Application Period, Stout further assisted the Receiver in reviewing Investor and Claimant inquiries in order to resolve as many as possible without the need for further proceedings. Stout also assisted the Receiver in reviewing claims related to SP Agents and

responding to objections raised by certain SP Agents. Stout assisted in this process by reviewing the Receivership Entities' books and records and communicating with Otterbourg regarding Investor and SP Agent disputes. Stout continues to assist the Receiver in seeking to resolve the Investor and SP Agent inquiries.

*Plan of Distribution*

During the Application Period, Stout assisted Otterbourg and the Receiver in connection with implementation of the Court-approved Plan, including the preparation of distributions to Investors and Claimants including Silo and Pot Components related to cash proceeds received for StraightPath's investments in Scopely, Rubrik, Escrow Funds, SpaceX, Airbnb, Grab, 23andMe, Palantir, SoFi, Blend, Chime, and Klarna.

Applicant prepared for Distributions to Investors and Claimants, including taking steps to obtain IRS Forms W-9s from Investors and Claimants, as may be required, or other necessary tax documents, and to confirm addresses to which checks should be mailed and other implementation matters.

During the Application Period, Applicant specifically assisted with the following distributions:

**a. July 2026 Catch-up Distribution**

The Receiver distributed $192,616.12 to Investors that submitted a completed Form W-9 or Form W-8 ("Tax Form"), as applicable, to the Receiver after the Tax Form submission deadlines for prior Distributions and had not previously received a Distribution (Refer to Docket 625 for

details of the "July 2026 Catch-up Distribution"). Table 1 below provides detailed amounts and Investor[11] and Claimant counts for the distribution.[12]

***Table 1: July 2026 Catch-up Distribution***

| Pre-IPO Company | Silo Amount Distributed | Silo Investor Count | Pot Amount Distributed | Pot Investor Count | Claimant Count |
|---|---|---|---|---|---|
| Escrow Funds | N/A | N/A | $ 20,950.08 | 18 | 0 |
| SpaceX | $ 0.00 | 0 | 14,937.25 | 19 | 0 |
| Rubrik | 32,702.20 | 3 | 72,438.79 | 18 | 0 |
| Scopely | 38,729.15 | 2 | N/A | N/A | N/A |
| Palantir | 0.00 | 0 | 3,049.29 | 18 | 0 |
| Grab | 0.00 | 0 | 419.34 | 18 | 0 |
| Blend | N/A | N/A | 453.99 | 18 | 0 |
| Airbnb | 0.00 | 0 | 2,631.41 | 19 | 0 |
| SoFi | 0.00 | 0 | 1,878.88 | 18 | 0 |
| 23andMe | 0.00 | 0 | 9.49 | 18 | 0 |
| Chime | 0.00 | 0 | 50.71 | 12 | 0 |
| Klarna | 3,829.73 | 1 | 354.41 | 12 | 0 |
| Grab Settlement | N/A | N/A | 181.40 | 12 | 0 |

**E. <u>Tax Issues (Total Fees: $60,745.00)</u>**

During the Application Period, Stout assisted BRG and the Receiver in their ongoing review and analysis of pre-Receivership tax liability, if any, of the Receivership Entities and the tax implications of the "Qualified Settlement Fund." Specifically, Stout assisted BRG in preparing the financial analysis used to determine the tax liability realized from the sale of Pre-IPO or Public

[11] The number of Investors and Claimants that received a distribution is based on the number of applicable LP Numbers and Claim Numbers (collectively, the "Identification Numbers"). Identification Numbers may have received more than one check if the Identification Number represents more than one individual and/or entity that is a beneficiary to the interest in the StraightPath Receivership.
[12] Table 1 reports amounts distributed and eligible Investor and Claimant counts based on the Receiver's Notice of July 2026 Catch-up Distribution [Dkt. 625].

Company Shares or other recovery. Stout continues to update investor data, which may affect tax reporting.

During the Application Period, Applicant assisted BRG in preparing the financial data required for amended tax filings for the tax year 2022 and responding to Investor inquiries regarding prior amended tax filings. Applicant also assisted BRG in preparing financial data for 2025 tax filings.

During the Application Period, Applicant assisted BRG and the Receiver in preparing for 2026 estimated tax filings.

## IV. EXPLANATION OF EXPENSES AND RELATED POLICIES

Applicant does not seek reimbursement for out-of-pocket costs during the Application Period.

In some instances, costs incurred during a particular application period will not be reflected in Applicant's records until a subsequent application period. Applicant will seek reimbursement for such "trailing" expenses in subsequent fee application periods.

## V. FACTORS TO BE CONSIDERED BY THE COURT IN AWARDING FEES

Stout hereby incorporates by reference the Factors To Be Considered By The Court In Awarding Fees Section that the Receiver and Otterbourg set forth in the *Eighteenth Joint Interim Application of The Receiver and Otterbourg P.C. for Allowance of Compensation and Reimbursement of Expenses Incurred During the Period July 1, 2026 through and including September 30, 2026.*

Under the applicable standards, Applicant has adequately demonstrated that the amount of fees requested is appropriate and warranted.

## VI. HOLDBACKS

At the Receiver's request, Stout has agreed to hold back payment of thirty percent (30%) of the allowed fees requested in this Eighteenth Interim Application (the "***Holdback Amount***"), which unless otherwise approved by the Court will only be paid at the conclusion of the Receivership if and to the extent that the Court approves.

WHEREFORE, Stout respectfully requests that the Court:

(a) grant interim approval of Stout's compensation in the amount of $214,804.80 (the "***Allowed Fees***"); and

(b) grant such other relief as the Court deems appropriate.

Dated: New York, NY
November 16, 2026

*/s/ Joel Cohen*

Joel Cohen
Managing Director
Stout Risius Ross, LLC
JCohen@stout.com